UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-3312(DSD/SER)

John J. Kerwin, individually and
as trustee of the John J. Kerwin
Trust,

    Plaintiff,

v.              **ORDER**

Bank of America, N.A., as
successor by Merger to Countrywide
Federal Savings Bank, FSB, and BAC
Home Loans Servicing LP, a subsidiary
of Bank of America, N.A., a Texas
Limited Partnership formerly known
as Countrywide Home Loans Servicing
LP; Federal National Mortgage
Association, John Does 1-10;
Jane Does 1-10,

    Defendants.

  Michael J. Keogh, Esq., Keogh Law Office, P.O. Box 11297,
St. Paul, MN 55111, counsel for plaintiff.

  Mark G. Schroeder, Esq. and Briggs & Morgan, PA, 80 South
Eighth Street, Suite 2200, Minneapolis, MN 55402; Keith
S. Anderson, Esq. and Bradley, Arant, Boult & Cummings,
LLP, One Federal Place, 1819 Fifth Avenue North,
Birmingham, AL 35203, counsel for defendants.

  This matter is before the court upon the motion to dismiss by

defendants Bank of America, N.A. (BANA)[1] and Federal National

---

[1] BANA is successor by merger to Countrywide Federal Savings
Bank, FSB (CFSB) and BAC Home Loans Servicing, LP (BACHLS). At all
times relevant to the instant dispute, CFSB and BACHLS were
subsidiaries of BANA. <u>See</u> Am. Compl. ¶ 38.

Mortgage Association (Fannie Mae) (collectively, defendants).[2]
Based on a review of the file, record and proceedings herein, and
for the following reasons, the court grants the motion.

### BACKGROUND

This mortgage dispute arises out of the proposed foreclosure
on property owned by plaintiff John J. Kerwin.  In June 1998,
Kerwin acquired and recorded the title to property located at Unit
#2B, Condominium #300, Grove Street Flats, Hennepin County,
Minnesota (Property).  Am. Compl. ¶¶ 9-10.  In March 2008, Kerwin
refinanced the $417,000 mortgage on the Property with CFSB.  Id.
¶ 11; see id. Ex. A; Anderson Aff. Ex. A.  Kerwin submitted several
monthly mortgage payments, reducing the balance to approximately
$366,811.  Am. Compl. ¶ 16.

In November 2010, Kerwin contacted BANA, seeking to again
refinance his mortgage.  See id. ¶ 15.  BANA suggested that Kerwin
pursue a loan modification rather than refinancing, and instructed
Kerwin to make partial payments until such a modification was
approved.  Id. ¶ 17.

Kerwin applied for a loan modification on December 20, 2010,
and submitted partial payments - which BANA accepted - through
March 2011.  Id. ¶¶ 18-19.  From April 2011 through July 2011,

---

[2] On May 1, 2014, defendant Mortgage Electronic Registration
Systems, Inc. was voluntarily dismissed pursuant to Rule
41(a)(1)(A).  See ECF No. 16.

however, BANA rejected such partial payments, as well as escrow payments.  Id. ¶ 21.  BANA denied the loan modification application in May 2011.  Id. ¶ 23.  Thereafter, Kerwin attended BANA outreach sessions and requested that a BANA employee assist him as he sought reconsideration of his loan modification application.  See id. ¶¶ 24, 27-28.  While the reconsideration was pending, BANA allowed Kerwin to submit payments according to a payment schedule.  Id. ¶ 29.  Kerwin largely complied with the schedule and other payment requests by BANA.  See id. ¶¶ 30-36.  In November 2011, BANA again denied the loan modification application.  Id. ¶ 37.

On December 14, 2011, BANA[3] recorded a Power of Attorney to Foreclose and Pendency of Proceeding.  Id. ¶ 39; see id. Ex. C, at 2-3.  Kerwin continued to submit requested documents in support of his loan modification application.  Am. Compl. ¶ 41.  In August 2012, BANA again denied the loan modification.  Id.

In September 2012, in response to an inquiry made by the Minnesota Attorney General's Office on Kerwin's behalf, BANA informed Kerwin that it no longer owned the mortgage.  Id. ¶ 43; see id. Exs. D-E.  In December 2012, Fannie Mae sent a letter to Kerwin stating that it owned the mortgage and that BANA serviced the mortgage on its behalf.  Am. Compl. ¶ 45; see id. Ex. F. Kerwin applied for a loan modification with Fannie Mae, which was

---

[3] On May 12, 2011, BANA had assigned the mortgage to BACHLS. The assignment was recorded on December 14, 2011.  Id. ¶ 38; see id. Ex. B.

denied in February 2013.  Am. Compl. ¶ 46.  Kerwin again applied to
BANA for a loan modification, which was again denied.  See id.
¶ 48.  During his efforts to have the loan modification application
approved, Kerwin was considered delinquent on the mortgage.
See id. Ex. F, at 1.

Kerwin commenced the instant action on December 3, 2013, the
day before a scheduled sheriff's sale.  Am. Compl. ¶ 55.  The
scheduled sale and pending foreclosure were canceled.  Id. ¶ 56.
In January 2014, BANA notified Kerwin that his mortgage obligation
had again been referred for foreclosure.  Id. ¶ 57; see id. Ex. I.
On April 24, 2014, Kerwin filed an amended complaint,[4] alleging a

---

[4] Defendants argue that the amended complaint is not timely
and that, as a result, the original complaint is operative.  "A
party may amend its pleading once as a matter of course within:
(A) 21 days after serving it, or (B) ... 21 days after service of
a responsive pleading or 21 days after service of a motion under
Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P.
15(a)(1).  Here, Fannie Mae and BOA were served on April 2 and
April 3, 2014, respectively.  See ECF Nos. 9, 10.  Thus, the
amended complaint was properly filed within 21 days of service on
BANA, but was a day late as to Fannie Mae.  The court, however,
"should freely give leave" to amend under Rule 15(a)(2) even where
such a motion is not timely under Rule 15(a)(1).  See United States
ex rel Roop v. Hypoguard USA, Inc., 559 F.3d 818, 823 (8th Cir.
2009).  Further, Fannie Mae has not argued that it will suffer any
prejudice if the court allows the amendment.  Therefore, the court
considers the amended complaint as the operative complaint.  As a
result, the court treats the motion to dismiss the original
complaint as a motion to dismiss the amended complaint.  See
Cartier v. Wells Fargo Bank, N.A., 547 F. App'x 800, 804 (8th Cir.
2013) (per curiam).

claim for breach of contract and promissory estoppel and seeking a declaratory judgment that the foreclosure proceedings are defective.  Defendants move to dismiss.

## DISCUSSION

### I.   Standard of Review

The Declaratory Judgment Act, 28 U.S.C. § 2201, grants courts discretion to declare rights.  <u>Twin City Fed. Sav. & Loan Ass'n v. Gelhar</u>, 525 F. Supp. 802, 804 (D. Minn. 1981).  "An action for declaratory relief properly should be entertained where a judgment will serve a useful purpose in clarifying and settling legal relations, and where it will terminate the proceedings and afford relief from uncertainty, insecurity and controversy."   <u>Id.</u> (citation omitted).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).  Although a complaint need not

contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record, some materials that do not contradict the complaint, exhibits attached to the complaint and materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the exhibits submitted by Kerwin and defendants are either attached to or necessarily embraced by the amended complaint. As a result, such exhibits are properly before the court.

## II. Breach of Contract

Kerwin first alleges that "BANA failed to honor the modified mortgage contract by returning timely payments and accepting but failing to credit certain partial payments." Am. Compl. ¶ 71. Defendants respond that Minnesota Statutes § 513.33 precludes such a claim. Section 513.33 provides that a "debtor may not maintain an action on a credit agreement[5] unless the agreement is in

---

[5] A credit agreement is "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend
(continued...)

writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and debtor." Minn. Stat. § 513.33, subdiv. 2. Specifically, defendants argue that any alleged modification to the contract was made orally and, as a result, is not enforceable.

Kerwin responds that the doctrine of part performance salvages his breach of contract claim. Specifically, Kerwin argues that BANA accepted several payments towards the loan modification, and that such acceptance satisfies § 513.33 where, as here, a plaintiff seeks specific performance. As a threshold matter, it is unclear whether § 513.33 precludes an action for specific performance in the absence of a written credit agreement. See Becker v. First Am. State Bank of Redwood Falls, 420 N.W.2d 239, 241 (Minn. Ct. App. 1988) ("Appellants' argument that the writing requirement [of § 513.33] is eliminated under the equitable doctrine of part performance is inappropriate because that doctrine does not apply *to actions at law for money damages*." (emphasis added) (citations omitted)).

Even if the doctrine of part performance applies, however, dismissal of the breach of contract claim is warranted. In Minnesota, "the doctrine of part performance takes an agreement out

_____

(...continued)
credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subdiv. 1(1). It is well-established that a loan modification is a credit agreement. See Tharaldson v. Ocwen Loan Serv., LLC, 840 F. Supp. 2d 1156, 1162 (D. Minn. 2011).

of the statute of frauds when the party seeking the relief can show detrimental reliance." Racutt v. U.S. Bank, N.A., No. 11-2948, 2012 WL 1242320, at *3 (D. Minn. Feb. 23, 2012) (citation omitted). "[P]art performance applies where plaintiff shows that his acts of part performance in reliance upon the contract have so altered his position that he will incur unjust and irreparable injury in the event that defendant is permitted to rely on the statute of frauds." Laurent v. Mortg. Elec. Registration Sys., Inc., No. 11-2585, 2011 WL 6888800, at *4 (D. Minn. Dec. 20, 2011) (citation and internal quotation marks omitted). In order to apply the doctrine of part performance, a plaintiff must allege that a promise or agreement was made. See Michel v. Vogelpohl, No. A05-1263, 2006 WL 1073191, at *1 (Minn. Ct. App. Apr. 25, 2006).

Here, Kerwin has only alleged that BANA told him "that a loan modification was preferable to refinancing his existing mortgage, and to make partial payments on his mortgage obligation until the modification was approved." Am. Compl. ¶ 17. As a result of such a statement, Kerwin argues that he was induced to pursue a loan modification rather than seek refinancing. Id. ¶ 78. Such language, however, cannot "plausibly be viewed as a promise." Racutt, 2012 WL 1242320, at *3. Indeed, BANA specifically informed Kerwin that modification was contingent on an application and in no way promised approval. "At most, [Kerwin has] alleged that [he] hoped to, but did not, enter into a loan modification." Tharaldson

v. Ocwen Loan Serv., LLC, 840 F. Supp. 2d 1156, 1163 (D. Minn. 2011). Thus, BANA did not make a promise to modify the loan. As a result, the doctrine of part performance would not apply and dismissal of the breach of contract claim is warranted.

## III.  Promissory Estoppel

Kerwin next argues a claim for promissory estoppel. Promissory estoppel is "an equitable doctrine that impl[ies] a contract in law when none exists in fact." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (alteration in original) (citations and internal quotation marks omitted). "To state a claim for promissory estoppel, the plaintiff must show that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice." Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 834 (Minn. 2011) (citation omitted). As already explained, however, BANA did not make a clear and definite promise. Therefore, Kerwin cannot state a claim for promissory estoppel, and dismissal is warranted.

## IV.  Foreclosure Sale

Finally, Kerwin seeks a declaratory judgment that the planned sheriff's sale would have been defective because the assignment of the mortgage to Fannie Mae was not recorded prior to commencement of foreclosure proceedings. Defendants argue that such a claim

fails because it (1) is not ripe, because no foreclosure sale has occurred and (2) cannot independently establish a cause of action. The court agrees.

"The case or controversy requirement of Article III applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief." Marine Equip. Mgmt. Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993) (citation omitted). "The test to determine whether there is an actual controversy within the meaning of the Declaratory Judgment Act is whether there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (citations and internal quotation marks omitted). "The controversy must be live throughout the course of the litigation and must exist at the time of the district court's hearing of the matter ...." Id. (citations omitted).

Here, there is no ripe underlying controversy. Indeed, Kerwin concedes that the declaratory judgment claim based on a defective foreclosure sale "is not yet ripe because the foreclosure action pending at the time the [c]omplaint was cancelled without a sale occurring, and any existing defects could be cured in a future foreclosure prior to a Sheriff's sale." Mem. Opp'n at 2. For this reason alone, dismissal is warranted.

Further, a declaratory judgment is a remedy, not a cause of action. See, e.g., Buck v. Am. Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201, "creates a remedy, not a cause of action"). In light of the court's conclusion that Kerwin's substantive claims must be dismissed under Rule 12(b)(6), Kerwin is "left with a remedy in search of right." Scanlon v. Northwest Mortg., Inc., No. 11-3128, 2012 WL 2885131, at *7 (D. Minn. July 13, 2012). As a result, dismissal of the declaratory judgment claim based on allegedly defective foreclosure proceedings is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 4] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 8, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court